342 S.E.2d 147

Ronald L. KIMES

v.

L.W. BECHTOLD, as Commissioner of the West Virginia Department of Motor Vehicles, and R.R. Bolen, as Director of the Safety and Enforcement Bureau of the West Virginia Department of Motor Vehicles.

No. 16915.

Supreme Court of Appeals of West Virginia.

March 12, 1986.

Robert W. Friend, Friend & Reed, Parkersburg, for appellant.

Doren Burrell, Asst. Atty. Gen., Charleston, for appellees.

McHUGH, Justice:

In this proceeding the petitioner, Ronald L. Kimes, seeks a writ of mandamus compelling the respondents, L.W. Bechtold, Commissioner of the West Virginia Department of Motor Vehicles, and R.R. Bolen, Director of the Safety and Enforcement Bureau of the West Virginia Department of Motor Vehicles, to reissue his license to operate a motor vehicle upon his successful completion of an educational, treatment or rehabilitation program. We hold that the petitioner is not entitled to the relief requested and, accordingly, deny the writ.[1]

I

On December 19, 1983, the petitioner was arrested by a police officer of the City of Parkersburg, West Virginia for the alleged offense of driving under the influence of alcohol. The petitioner refused to submit to the designated secondary chemical test, namely, a breathalyzer test, which test is authorized by *W. Va. Code*, 17C–5–4 [1983].[2] Consequently, pursuant to *W. Va. Code*, 17C–5–7(a) [1983], the Commissioner on December 27, 1983 entered an order revoking the petitioner's license to operate a motor vehicle in this State for a period of one year, for the petitioner's first refusal to submit to such a test.[3] Thereafter, the

---

1. In his amended petition filed on the day of oral argument in this case, the petitioner raises in a cursory manner the issue of whether an order revoking a license to operate a motor vehicle is effective, as apparently asserted by the Department of Motor Vehicles, only after the license has been surrendered to the Department. (The record in this case does not indicate conclusively the date on which the Department received the license of the petitioner. It apparently was in February, 1985.) Not having briefed this point, the petitioner is deemed to have waived the same. *See Brammer v. Taylor*, 175 W.Va. 728, 732 n. 5, 338 S.E.2d 207, 211 n. 5 (1985).

2. *W. Va. Code*, 17C–5–4 [1983], provides in pertinent part:

    Any person who drives a motor vehicle in this State shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to a preliminary breath analysis and a secondary chemical test of either his blood, breath or urine for the purposes of determining the alcoholic content of his blood.... A secondary test of blood, breath or urine shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have committed an offense prohibited by section two of this article or by an ordinance of a municipality of this State which has the same elements as an offense described in said section two of this article.... Any person to whom a preliminary breath test is administered who is then arrested shall be given a written statement advising him that his refusal to submit to the secondary chemical test finally designated as provided in this section, will result in the revocation of his license to operate a motor vehicle in this State for a period of at least one year and up to life.

    ....

3. *W. Va. Code*, 17C–5–7(a) [1983], provides in pertinent part:

    (a) If any person under arrest as specified in section four, of this article refuses to submit to any secondary chemical test, the test shall not be given: Provided, that prior to such refusal, the person is given a written statement advising him that his refusal to submit to the secondary test finally designated will result in the revocation of his license to operate a motor vehicle in this State for a period of at least one year and up to life....

petitioner, in accordance with *W.Va.Code*, 17C–5A–2(a) [1983], timely requested an administrative hearing on the license revocation. A hearing was held and pursuant to *W.Va.Code*, 17C–5A–2(k)–(*l*) [1983], the Commissioner on July 16, 1984 entered a final order revoking the petitioner's license for a period of one year.

After this final order of revocation was received by the petitioner, he, on a date not contained in the record, contacted the Western District Guidance Center in Jackson County, West Virginia for information on an alcoholism educational, treatment or rehabilitation program. The petitioner was informed that his successful completion of such a program would not, in his case, accelerate the expiration of the license revocation period. In his petition for a writ of mandamus filed with this Court the petitioner contends that the Commissioner must reinstate the petitioner's operator's license upon his successful completion of an alcoholism educational, treatment or rehabilitation program, inasmuch as more than half of the year-long revocation period has elapsed.[4]

The Commissioner asserts that the early reissuance of a license to operate a motor vehicle is available in a case involving a second or third offense of refusing to submit to a secondary chemical test but is not available in a case involving a first refusal to so submit. The petitioner, on the other hand, argues that there would be no statutory incentive to take and complete such a program after a first refusal to submit to a secondary chemical test, if the statute is to be read as asserted by the Commissioner so as to preclude the early reissuance of the license in such a case.

II

■ The guiding principle in this case is set forth in syllabus point 4 of *State ex rel. Fetters v. Hott*, 173 W.Va. 502, 318 S.E.2d 446 (1984), wherein this Court, quoting syllabus point 3 of *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975), held: " 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' " *See also* syl. pt. 2, *Shell v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985); syl. pt. 1, *Huntington Human Relations Commission ex rel. James v. Realco, Inc.*, 175 W.Va. 24, 330 S.E.2d 682 (1985); *Manchin v. Dunfee*,

---

For the first refusal to submit to the designated secondary chemical test, the commissioner shall make and enter an order revoking such person's license to operate a motor vehicle in this State for a period of one year. If the commissioner has *previously revoked* the person's license *under* the provisions of *this section*, the commissioner shall, for the refusal to submit to the designated secondary chemical test, make and enter an order revoking such person's license to operate a motor vehicle in this State for a period of *ten years: Provided*, that the license *may be reissued in five years in accordance with the provisions of section three, article five-A of this chapter.* If the commissioner has *previously revoked* the person's license *more than once under* the provisions of *this section*, the commissioner shall, for the refusal to submit to the designated secondary chemical test, make and enter an order revoking such person's license to operate a motor vehicle in this State for a period of *life: Provided*, that the license *may be reissued in ten years in accordance with the provisions of section three, article five-A of this chapter....*

....

(emphasis added)

4. *W.Va.Code*, 17C–5A–3(b)(2) [1983], provides in pertinent part:

(2) The commissioner, after giving due consideration to the program developed for the offender, shall prescribe the necessary terms and conditions for the reissuance of the license to operate a motor vehicle in this State revoked under this article [for driving under the influence of alcohol or controlled substances], or section seven, article five of this chapter, ... which shall include successful completion of the [alcoholism or drug abuse] educational, treatment or rehabilitation program, subject to the following:

....

(B) When the period of revocation is for a period of years, the license to operate a motor vehicle in this State shall not be reissued until (i) at least one half of such time period has elapsed from the date of the initial revocation during which time the revocation was actually in effect, (ii) the offender has successfully completed the program, (iii) all costs of the program and administration have been paid, and (iv) all costs assessed as a result of a revocation hearing have been paid.

....

174 W.Va. 532, 535, 327 S.E.2d 710, 713 (1984); syl. pt. 3, *ACF Industries, Inc. v. Credithrift of America, Inc.*, 173 W.Va. 83, 312 S.E.2d 746 (1983); syl. pt. 1, *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981). *See generally* 2A N. Singer, *Sutherland Statutes and Statutory Construction* § 51.03 (Sands 4th ed. 1984 rev.). This *in pari materia* rule of statutory construction applies, of course, only when the particular statute is ambiguous: " 'The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous.' " Syl. pt. 4, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984), quoting syl. pt. 1, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).[5] Moreover, "[t]he rule is most applicable to those statutes relating to the same subject matter which are passed at the same time or refer to each other or amend each other." *Manchin v. Dunfee*, 174 W.Va. 532, 536, 327 S.E.2d 710, 714 (1984).

In the case now before us, *W.Va. Code*, 17C–5A–3 and *W.Va.Code*, 17C–5–7 were passed at the same time and refer to each other. *W.Va.Code*, 17C–5A–3(b)(1), amended by 1983 *W.Va.Acts*, ch. 138, requires "the preparation of an [alcoholism or drug abuse] educational and treatment program for each person whose license has been revoked *under the provisions of* this article [for driving under the influence of alcohol or controlled substances] or *section seven, article five of this chapter, ...*" (emphasis added) The latter section, *W.Va.Code*, 17C–5–7, was also amended by 1983 *W.Va.Acts*, ch. 138. *W.Va.Code*, 17C–5–7 specifically refers to and incorporates the license reissuance provisions of *W.Va.Code*, 17C–5A–3. (See n. 3, *supra*, for the language of *W.Va.Code*, 17C–5–7.) *W.Va.Code*, 17C–5A–3 and *W.Va.Code*, 17C–5–7 both involve license reissuance provisions and are inextricably connected

to give the complete legislative scheme for reissuance of a license to operate a motor vehicle after revocation of the license for refusal to submit to a secondary chemical test for blood alcohol content. *W.Va.Code*, 17C–5A–3 in isolation is ambiguous in the sense that it does not mention the early reissuance of the license when the period of revocation is one year, the period of revocation for a "first refusal" case: *W.Va.Code*, 17C–5A–3(b)(2)(A) authorizes reissuance after 90 days when the period of revocation— for driving under the influence of alcohol or controlled substances—is six months; *W.Va.Code*, 17C–5A–3(b)(2)(B) authorizes reissuance after one-half of the revocation period when the period of revocation is for a period of years; and *W.Va.Code*, 17C–5A–3(b)(2)(C) authorizes reissuance after ten years when the period of revocation is for life. The petitioner contends that the phrase "period of years" includes a one-year revocation period. The absence of reference to a period of revocation of one year in the list of revocation periods is, however, telling.

This unique treatment of a "first refusal" case, involving a one-year revocation, is confirmed by *W.Va.Code*, 17C–5–7. Unlike the express provisos therein for second refusal cases and third refusal cases, there is no proviso in *W.Va.Code*, 17C–5–7(a), in a first refusal case, referring to the early reissuance provisions of *W.Va.Code*, 17C–5A–3. The legislature could have easily added a proviso in *W.Va.Code*, 17C–5–7(a), immediately after stating the period of revocation for a first refusal case, in which proviso the early reissuance provisions of *W.Va.Code*, 17C–5A–3 were cross-referenced and the period of time after which the license could be reissued was stated, as was done for second and third refusal cases. The absence of such a proviso indicates that the legislative intent was to exclude the possibility of the early reissuance of the license after revocation for a first refusal to submit to the secondary chemical test.

---

5. This limitation on the *in pari materia* rule is a particular example of the general principle that " '[r]ules of interpretation are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it.' *Crockett v. Andrews*, 153 W.Va. 714, 719, 172 S.E.2d 384, 387 (1970)."

A refusal to submit to a secondary chemical test for blood alcohol content does not result in a determination that the person was driving under the influence of alcohol, but, instead, constitutes an independent violation of one of the conditions governing use of the license to operate a motor vehicle in this State.[6] It is easier to infer the need for an alcoholism educational, treatment or rehabilitation program after revocation of the license to operate a motor vehicle for driving under the influence of alcohol than it is to infer such a need after revocation for refusing for the first time to submit to a secondary chemical test for blood alcohol content. In any event, we will apply the terms of *W. Va. Code*, 17C–5–7(a) as written.

We therefore hold that *W. Va. Code*, 17C–5A–3 [1983], read *in pari materia* with *W. Va. Code*, 17C–5–7 [1983], does not authorize the early reissuance of a license to operate a motor vehicle, after the successful completion of an alcoholism educational, treatment or rehabilitation program, where the license had been revoked for a first refusal to submit to a designated secondary chemical test.

### III

Lacking a clear right to the relief sought, the petitioner is not entitled to the writ of mandamus:

"A writ of mandamus will not issue unless three elements coexist—(1) a clear [legal] right in the petitioner to the relief sought; (2) a [clear] legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl., *Oakley v. Gainer*, 175 W.Va. 115, 331 S.E.2d 846 (1985). *See also* syl. pt. 1,

*Deller v. Naymick*, 176 W.Va. 108, 342 S.E.2d 73, 77 (1985).

**6.** *W. Va. Code*, 17C–5A–1(a) [1983] provides:

(a) Any person who is licensed to operate a motor vehicle in this State and who drives a motor vehicle in this State shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to the procedure set forth in this article for the

*American Federation of State County & Municipal Employees v. Civil Service Commission*, 176 W.Va. 73, 341 S.E.2d 693 (1985); syl., *State ex rel. Ruddlesden v. Roberts*, 175 W.Va. 161, 332 S.E.2d 122 (1985); syl. pt. 1, *West Virginia Citizens Action Group, Inc. v. Daley*, 174 W.Va. 299, 324 S.E.2d 713 (1984); syl. pt. 1, *Jawa v. Board of Education*, 174 W.Va. 200, 324 S.E.2d 161 (1984); syl. pt. 1, *Allen v. State Human Rights Commission*, 174 W.Va. 139, 324 S.E.2d 99 (1984) (and cases collected at 174 W.Va. at 145 n. 3, 324 S.E.2d at 105 n. 3); syl. pt. 2, *Wheeling Barber College v. Roush*, 174 W.Va. 43, 321 S.E.2d 694 (1984); syl. pt. 1, *Woodruff v. Board of Trustees*, 173 W.Va. 604, 319 S.E.2d 372 (1984); syl. pt. 1, *Reed v. Hansbarger*, 173 W.Va. 258, 314 S.E.2d 616 (1984) (and cases collected at 173 W.Va. at 261–262, 314 S.E.2d at 619–20).

Accordingly, the writ of mandamus will not issue.

Writ denied.

determination of whether his license to operate a motor vehicle in this State should be revoked because he did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or combined influence of alcohol or controlled substances or drugs, or did drive a motor vehicle while having an alcoholic concentration in his blood of ten hundredths of one percent or more, by weight, or did refuse to submit to any designated secondary chemical test.